The STATE of Ohio, Appellee,

v.

SCOTT, Appellant.

[Cite as *State v. Scott* (1989), 63 Ohio App.3d 304.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55312.

Decided June 16, 1989.

306

*John T. Corrigan,* Prosecuting Attorney, and *George Sadd,* Assistant Prosecuting Attorney, for appellee.

*Randall M. Dana,* Ohio Public Defender, and *Joann Bour–Stokes,* Assistant Public Defender, for appellant.

DYKE, Judge.

Appellant, Jay D. Scott, was convicted of aggravated murder, with specifications,[1] and aggravated robbery and sentenced to death. On appeal by new

---

1. SPECIFICATION ONE: "The Grand Jurors further find and specify that the offense presented above was committed while the offender was committing or attempting to commit or fleeing immediately after committing or attempting to commit Aggravated

counsel his conviction was affirmed by this court and the Ohio Supreme Court and his petition for a writ of certiorari was denied.[2] New appellate counsel filed a petition for post-conviction relief and a motion to have the trial judge recuse himself.

The trial judge denied the motion to recuse. The trial court dismissed the petition without a hearing and granted the state's motion to dismiss.

### Assignment of Error No. I

"The trial court erred in summarily dismissing appellant Scott's post-conviction petition without according him an evidentiary hearing. In addition, the resulting findings of fact and conclusions of law issued by the court failed to comply with the requirements of Ohio law."

■ A petition for post-conviction relief is subject to dismissal without a hearing when the record indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary documents containing sufficient operative facts. *State v. Kapper* (1983), 5 Ohio St.3d 36, 38, 5 OBR 94, 96, 448 N.E.2d 823, 825. The trial court was required to review "the petition and the files and records of the case." R.C. 2953.21(C) and (E). Appellant's motion to transfer the portion of the record that was with the court of appeals to the trial court was granted on January 25, 1988. The petition was dismissed on January 28, 1988. A motion to transfer the portion of the record lodged with the Ohio Supreme Court was granted after the motion to dismiss the petition was granted. The findings of fact and conclusions of law were five pages long and did not specify the portions of the files and record which established the bar of *res judicata*.

The trial judge stated, "it is specifically concluded that after a review of all *relevant* files and documents pertaining to the instant proceedings that no substantial grounds for relief exist * * *." (Emphasis added.) However, that statement referred only to the issue of ineffective assistance of appellate counsel. Limiting review to the portion pertinent to an issue is proper. The trial judge stated: "The pleadings, files, and other records in the present case

---

Robbery and either the offender was the principal offender in the commission of the Aggravated Murder or, if not the principal offender, committed the Aggravated Murder with prior calculation and design."

SPECIFICATION TWO: "The Grand Jurors further find and specify that the [offender] * * * had a firearm on or about [his] person or under [his] control while committing the offense charged in this count of the indictment."

2. *State v. Scott* (June 3, 1985), Cuyahoga App. No. 48609, unreported, 1985 WL 9047, affirmed *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55, certiorari denied, (1987), 480 U.S. 923, 107 S.Ct. 1386, 94 L.Ed.2d 699.

demonstrate that there has been no denial or infringement of constitutional or statutory rights * * * [and] no substantial grounds for relief. * * * "

The records transferred from the Ohio Supreme Court consisted of the proceedings before that court. Appellant's brief at 2. The petition is directed to the trial and the direct appeal and the records pertaining to those levels were transferred to the trial court on January 25, 1988. The trial judge concluded that eight of the nine errors claimed were, or could have been, raised in the direct appeal and were barred by *res judicata*. He concluded that the last claim was not properly raised in a post-conviction petition.

Those were decisions made as a matter of law and conceivably made in the three-day interval between the transfer and the granting of the motion to dismiss. There is no indication that the review was insufficient.

A three-sentence paragraph that failed to cite the record still constituted sufficient findings of fact and conclusions of law in *State, ex rel. Carrion, v. Harris* (1988), 40 Ohio St.3d 19, 530 N.E.2d 1330.

As stated in the discussion of each assignment of error, no hearing was required except on the claim of ineffective assistance of trial counsel during the mitigation phase. Assignment of Error No. I is overruled in part and sustained in part.

### Assignment of Error No. II

"Appellant Scott was denied the effective assistance of counsel at his capital trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."

This assignment of error is well taken, in part.

Appellant presented several affidavits from his friends and family. The conclusions of law stated that the claims could have been determined without evidence *dehors* the record.

Most of the claims argued by appellant could have been raised on appeal and are barred by *res judicata*.[3] However, the failure to present mitigation evidence could not have been determined on direct appeal because the evidence of the lack of an effort to contact witnesses and the availability of mitigation evidence was not present until the affidavits were made a part of the petition.

---

**3.** Failure to ask the trial judge to recuse himself upon calling this a "chair case," failure to object to irrelevant and inflammatory prosecutorial comment and references to lack of remorse and the statement by the judge that the jury verdict was only a recommendation, permitting proceedings to occur off the record, and failure to object to the use of a gun specification as an aggravating circumstance.

██ Appellant presented several affidavits from family members which stated that they were never contacted by trial counsel, that they were willing to testify and what they would have testified. In order to show the ineffective assistance of counsel at the guilt phase appellant relied, in part, on these affidavits.

Appellant's sister (paragraphs 5 and 6 of exhibit J) and the mother of his son (paragraph 5 of exhibit N) stated that *appellant* told them co-defendant Edward O'Neal killed the victim. A friend of appellant's family (paragraphs 6 and 7 of exhibit M) stated that *appellant* told him he was framed. Appellant's brother (paragraph 4 of exhibit K) stated that "others were involved." None of this information is relevant.

██ However, appellant's other sister (paragraphs 2, 3 and 4 of exhibit I) stated that O'Neal admitted in her presence that O'Neal killed the victim. O'Neal testified at trial that appellant shot the victim and that O'Neal was not armed.

Ricky Tramble testified that on the day Vinnie Prince was killed he was with appellant and appellant's co-defendants, Edward O'Neal, Michael Streeter and Danny Jones. He stated that appellant said, "Well, I did what I had to do. She shouldn't have made me move like that. Fuck it. It's over with * * *. These niggers don't know what they're doing. * * * [T]hey get to crying about this and crying about that. This is what I do." Appellant claimed to be "a stick-up man." O'Neal told the witness the next day that they were involved in the incident, including the shooting.

Jones gave a written statement which admitted that he, O'Neal, Streeter and appellant were driving around looking for a place to rob when they chose the victim's store. Appellant asked for "front money" to use while he pretended to buy. O'Neal agreed to go with him. Appellant had a .38 caliber pistol and O'Neal had a .25 caliber automatic handgun. Jones pulled the car around the corner. O'Neal later told Jones that appellant "shot her * * * cause she went for her shit [gun]." Jones asked appellant if he had killed her and Jones stated that appellant replied, "naw, she was still standing up when he ran out the door." At trial Jones denied that they had intended to rob the victim.

O'Neal stated in a written statement that he and appellant went into the store to get appellant food but appellant pulled out a pistol and told the victim to "freeze." She began to "holler" and "yell" and appellant fired at her and struck her. He said that he was unarmed but Streeter had a .25 caliber

weapon. He admitted discussing the incident with Tramble.[4]

O'Neal testified that appellant shot the victim. Appellant's sister would have testified that O'Neal admitted to the shooting. However, Tramble testified that appellant said he did what he had to do and she shouldn't have made him move like that. A hearing on the claim of ineffective assistance of counsel during the guilt phase was not necessary when the evidentiary documents failed to show that the petitioner is entitled to relief.

Appellant stated that the failure to investigate and present evidence during the mitigation phase and the failure to object to the erroneous use of a firearm specification as an aggravating circumstance were each ineffective assistance of counsel which required that the conviction be vacated as well as the sentence.

In the case cited, *State v. Johnson* (1986), 24 Ohio St.3d 87, 24 OBR 282, 494 N.E.2d 1061, the court vacated the conviction because of a failure to grant a continuance. *Id.* at 94, 24 OBR at 288, 494 N.E.2d at 1067. The failure to investigate and present evidence and the failure to object were separately found to each be ineffective assistance of counsel at the mitigation stage, *id.* at 89 and 94, 24 OBR at 283 and 288, 494 N.E.2d at 1063 and 1067, respectively, and the sentence was vacated. Appellant does not raise any claim concerning a denial of a continuance.

 The failure to object to the use of the firearm specification should have been raised by new counsel on direct appeal and is barred by *res judicata*. *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169.

 As in *Johnson* appellant presented no evidence at the mitigation phase except the unsworn statement of appellant stating his innocence. The affidavits of appellant's family and close friends of his family (exhibits D through Q) are evidence of potentially mitigating circumstances that show that counsel did not refrain from introducing evidence as a tactical decision.

The affidavits disclose that appellant was the sixth of eleven children whose father and mother were frequently absent and who separated when appellant was fourteen. His parents and his siblings abused alcohol and other drugs and lived in poverty so severe that sometimes there was no heat, and an aunt, a neighbor or governmental agency supplied food. Money was gambled away by his father. Extreme violence between the parents and against the children was routine. The father stabbed the mother. The appellant and his siblings were tied to chairs and beaten. The mother's boyfriend also beat the children.

---

4. The statement of the evidence is a summary of the statement of the Ohio Supreme Court at 26 Ohio St.3d at 93–94, 26 OBR at 79–80, 497 N.E.2d at 56–57.

A brother tried to intervene in a fight between the mother and a boyfriend and was killed. A sister was shot to death. A brother is a quadriplegic from a gunshot wound from his brother-in-law. A sister was acquitted of murder in the shooting of a brother-in-law.

Nevertheless there was a closeness particularly on the part of appellant who tried to help his sisters (who were involved in abusive relationships and using drugs) and tried to reunite estranged family members. He gave the sisters money and tried to persuade his siblings to get educated and limit their families. When he was young he attempted to protect his mother from his father's physical abuse. When he was older he tried to help children in the neighborhood and attempted to "read books and study the law." When he had steady employment he provided for his girlfriend and her children. He was looking for a job at the time of the offense and was a good father to his son. (See affidavits D through Q.)

The affidavits contain sufficient operative facts to show substantive grounds for relief and a hearing should have been held. The petition was improperly dismissed without even acknowledging the evidence *dehors* the record. Assignment of Error No. II is sustained in part.

### Assignment of Error No. III

"The trial court erred in failing to rule that the use of a gun specification as an aggravating circumstance at Mr. Scott's trial rendered his conviction voidable."

This assignment of error is without merit.

The indictment contained two specifications. The first was an aggravating circumstance that must be proven before the death penalty may be imposed. The second was a gun specification. Appellant contended that the record reveals repeated references to aggravating circumstances (in the plural) and thus the jury believed that both were aggravating circumstances.

This issue could have been determined without resort to evidence *dehors* the record and *res judicata* was a proper grounds for dismissal. Assignment of Error No. III is overruled.

### Assignment of Error No. IV

"The trial court erred in failing to conclude that appellant Scott's right to counsel was violated when his arraignment occurred without the assistance of counsel and the protections provided in Criminal Rule 10; the conduct of the arraignment violated the Sixth and Fourteenth Amendments of the United States Constitution, Section 10, Article I of the Ohio Constitution and Ohio Criminal Rule 10."

This assignment of error is without merit.

■ Appellant contended that counsel for the direct appeal failed to order the transcript of the arraignment which allegedly revealed that appellant was not given a copy of the indictment or represented by counsel before pleading.

The failure to provide appellant with a copy of the indictment before entering a plea, as required by Crim.R. 10, was apparent from the journal entry and could have been raised by counsel on direct appeal. Counsel on direct appeal could have, and should have, ordered transcripts of all proceedings. Appellant pleaded not guilty in the absence of counsel. *Res judicata* was a proper ground for dismissal of the claim. Assignment of Error No. IV is overruled.

### Assignment of Error No. V

"The trial court erred in failing to determine that there was insufficient evidence to convict appellant Scott of the capital charge as required by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution."

This assignment of error is without merit.

■ In order to show the insufficiency of the evidence of aggravated robbery appellant cites the testimony of his co-defendants. No evidence *dehors* the record is presented. This claim was barred by *res judicata.*

Appellant also contended that there was insufficient evidence of aggravated murder. He relied upon affidavits (exhibits I, J, K, M and N).

■ As noted in the discussion of Assignment of Error No. II, only the information in exhibit I is pertinent. The testimony in exhibit I attacks O'Neal's credibility and implicates O'Neal but does not prevent the jury from considering the case. An acquittal was precluded since the evidence (see Assignment of Error No. II) was such that reasonable minds could reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. Assignment of Error No. V is overruled.

### Assignment of Error No. VI

"The trial court erred in failing to declare appellant Scott's conviction voidable due to prosecutorial misconduct at his capital trial in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."

This assignment of error is without merit.

■ This claim could have been raised on direct appeal. *Res judicata* was a proper basis for dismissal. Assignment of Error No. VI is overruled.

## Assignment of Error No. VII

"The trial court erred in failing to determine that appellant Scott's death sentence was disproportionate to the sentences imposed on his co-defendants in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution."

This assignment of error is without merit.

■ The jury was aware that the co-defendants who testified were pleading to robbery. Since the three co-defendants did not plead to the same offense for which appellant was convicted the differences in sentences are not relevant. Given the evidence in the record (see Assignment of Error No. II) the failure to inform the jury of the plea of the co-defendant who did not testify or the sentences was not prejudicial. Assignment of Error No. VII is overruled.

## Assignment of Error No. VIII

"The trial court erred in failing to find that appellant Scott was denied the effective assistance of counsel on appeal as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."

■ Appellant cites two cases from this court in which an appellant claimed that a petition for post-conviction relief should be granted because the ineffectiveness of appellate counsel prevented appellant from raising a claim on direct appeal.[5] *Allen* and *DePompei* addressed the merits of the claim but the use of R.C. 2953.21 was not challenged.

In two more recent cases the ability to raise a claim of ineffective appellate counsel in a petition for post-conviction relief was challenged and rejected.

"Should Ohio's statute providing for post-conviction remedies be applicable to appellate court decisions, either of two patently unacceptable results follows: in effect, the criminal defendant would either be petitioning the trial court (1) to render its own judgment of conviction void or voidable due to the denial of constitutional guarantees at the appellate level, or (2) to render the judgment of the superior appellate court void or voidable due to the denial of constitutional guarantees at the appellate level. We find that neither of these

---

5. See *State v. Allen* (Dec. 18, 1986), Cuyahoga App. No. 50866, unreported, 1986 WL 14768; *State v. DiPompei* (Nov. 6, 1986), Cuyahoga App. No. 51250, unreported, 1986 WL 12643.

results is acceptable; both are clearly outside the purview of the Ohio Legislature in its enactment of R.C. 2953.21 *et seq.* An appellate court decision found to be constitutionally wanting by a trial court will not render a trial court's judgment of conviction void or voidable; a trial court is not empowered to render an appellate court decision void or voidable.

" * * *

"Accordingly, we find that R.C. 2953.21 provides for post-conviction remedies to redress constitutionally void or voidable judgments of conviction. The Ohio statute does not provide a remedy to redress state appellate court decisions claimed to result in the denial of constitutionally ensured guarantees." *State v. Mitchell* (1988), 53 Ohio App.3d 117, 118–119, 559 N.E.2d 1370, 1371–1372. See, also, *State v. Gross* (Aug. 18, 1988), Cuyahoga App. No. 54235, unreported, 1988 WL 88344 (citing *Mitchell*).

In the instant case the trial judge stated that the claim was beyond the scope of a post-conviction relief proceeding because the judgment attacked is that of the appellate court and the trial court cannot grant a rehearing in the court of appeals. Appellant now argues that he does not seek to challenge the decisions of this court or the Ohio Supreme Court. However, this court has also interpreted R.C. 2953.21 to provide a means of raising constitutional issues arising on the *trial* level but not those on the appellate level. See *Mitchell* and *Gross*.

Assignment of Error No. VIII is overruled.

### Assignment of Error No. IX

"The trial court erred in failing to grant appellant Scott's motion to recuse in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and Section 16, Article I of the [Ohio] Constitution."

At trial the state's motion to substitute for the bailiff was moot because the trial judge appointed a special bailiff. Now appellant argues that the trial judge can recuse himself and should do so because the attorney that appellant alleges was ineffective at the mitigation phase was the original bailiff's husband.

The judge may recuse himself but chose not to do so. An allegation of personal bias or prejudice is not enough. It must appear that the judge's impartiality might reasonably be questioned. The mere fact that counsel is married to the judge's bailiff does not result in the appearance of impropriety although the better practice may be to avoid that possibility when the alternative is simply the transfer to another judge. We do not find, however, any error.

The only remaining issue to be heard upon remand is the ineffective assistance of counsel during the *mitigation* phase. During the guilt phase one of appellant's counsel should have moved to have the judge recuse himself. In any event there was no error in denying the motion. Assignment of Error No. IX is overruled.

This case is affirmed in part, reversed in part and remanded to the trial court for a hearing on the evidence *dehors* the record in support of the claim of ineffective assistance of trial counsel during the mitigation phase.

*Judgment accordingly.*

NAHRA and FRANCIS E. SWEENEY, JJ., concur.